IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VALENCE HEALTH, INC., | ) | Case No. 2:15-cv-02235 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT FOR DECLARATORY** |
| | ) | **JUDGMENT AND OTHER CLAIMS** |
| OHIOHEALTH GROUP, LTD., | ) | |
| | ) | **(JURY DEMAND ENORSED HEREIN)** |
| Defendant. | ) | |

Plaintiff, VALENCE HEALTH, INC. (hereinafter "Valence"), by and through counsel, for its Complaint for Declaratory Judgment, for Breach of Contract, and for Reformation against Defendant OHIOHEALTH GROUP, LTD. (hereinafter "OHG"), states as follows:

## NATURE OF THE ACTION

1. This is an action resulting from OHG's precipitous not-for-cause termination of a management agreement between itself and Valence over two and a half (2 ½) years before the parties agreed the contract was to expire. OHG's action will cause Valence to lose profits in an amount in excess of One Million Nine Hundred Thousand Dollars ($1,900,000) and to suffer reduced standing among institutional healthcare providers in the Ohio region. Valence seeks a declaration of its rights and damages for breach of contract, or, in the alternative, reformation of the agreement to conform to the intention of the parties.

## JURISDICTION AND VENUE

2. This action is brought pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §2201. Jurisdiction is proper because the matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. §1332; there is diversity of citizenship between Valence and OHG; and this is a declaratory judgment action involving a case of actual

controversy within the meaning of 28 U.S.C. §2201.

3. Venue is proper in the Southern District of Ohio pursuant to 28 U.S.C. §1391(b) because the Defendant resides, and the acts which form the basis of this action occurred, in the Southern District of Ohio.

## PARTIES

4. Valence Health, Inc. is a Delaware corporation with its principal place of business in Chicago, Illinois.

5. OhioHealth Group, Ltd. is an Ohio limited liability company with its principal place of business in Columbus, Ohio.

## FACTS

6. Valence provides sophisticated computer based management services to institutional healthcare providers, health plans, cooperatives founded under the Affordable Healthcare Act of the United States, and similar entities. Its management services agreements with such entities are typically multi-year arrangements requiring the investment of significant up front resources to become ready to provide the services and ongoing but diminishing investment of resources over the life of the agreement. As a result, the greater proportion of the profits it realizes from any one of these management services agreements is earned after the agreement has been in effect for an extended period of time. As well and for the same reason, Valence relies upon multi-year management agreements to earn a profit and remain viable.

7. On the 15th day of February 2010, Valence entered into one such management services agreement with OHG, a true and correct copy of which is attached hereto as Exhibit A (the "Original MSA").

8. Under section 3.1 of the Original MSA, the parties agreed to an initial term of four (4) years from the effective date but with automatic one (1) year extensions subject to an

annual termination with ninety (90) days notice.  Under section 3.6 thereof, OHG also had the right to terminate the Original MSA without cause under certain conditions by giving only ninety (90) days notice.

9. On January 6, 2011, Valence and OHG entered into a "First Amendment to Management Services Agreement," which is attached hereto as Exhibit B (the "First Amendment"). That First Amendment modified and limited OHG's right to terminate without cause as provided for in said section 3.6.  That section 3.6, as modified, is vague as to its meaning.  It either provides (a) a one-time not-for-cause termination right at the end of the thirty sixth (36th) month after the Effective Date of the Original MSA, or (b) a right to terminate without cause in a period extending from the end of the thirty sixth (36th) month after the Effective Date until the forty fifth (45th) month after the Effective Date.

10. On April 11, 2011, the parties signed another management services agreement, a true and copy of which is attached hereto as Exhibit C (the "April 2011 MSA").  The April 2011 MSA did not include a ninety (90) not-for-cause termination clause such as section 3.6 of the Original MSA as modified by the First Amendment.

11. Beginning in May 2012, the parties entered into the renegotiation of the agreements between them.  As part of these negotiations, OHG agreed to assure Valence that it would continue to utilize Valence for management services until December 31, 2017, subject only to a for-cause termination.  In exchange, Valence agreed to reduce its monthly base fee from $75,000 per month to $68,000 per month for the extension of the agreement for what amounted to five and a half (5½) additional years and to provide additional services for that reduced amount.  It did so because the extension of the term of the agreement for that considerable period of time allowed an additional time to recoup its initial investment and to

assure that the services it provided to OHG resulted in a profit and not a loss.

12. During the course of negotiations between the parties, Valence communicated to OHG that this price reduction was specifically in consideration of and contingent upon the extension of the term of the Original MSA until and through December 31, 2017, without a not-for-cause termination right. In response, OHG specifically agreed that the contract would extend until that time without the opportunity of termination except for cause.

13. On June 27, 2012, those negotiations resulted in an agreement to terms of a continued relationship and the parties set them to writing in a term sheet prepared by Valence but modified by OHG. That term sheet contained Valence's offer to reduce its monthly base fee in exchange for a secure right to an additional five (5) years under the agreement and OHG's agreement that the term would extend until December 31, 2017. The term sheet did not extend the not-for-cause termination right as set forth in section 3.6 of the Original MSA, as modified.

14. On that date, OHG offered to convert the terms in the term sheet to an amendment to the Original MSA and Valence agreed to permit OHG to do so. Resultantly, on August 1, 2012, the parties signed the third amendment to the Original MSA, designated as "Amendment #3," a document prepared by OHG and given to Valence to sign (hereinafter the "Third Amendment"). A true and correct copy of the Third Amendment is attached hereto as Exhibit D. That Third Amendment references the Original MSA, the First Amendment, and the April 2011 MSA which it characterizes as "Amendment #2" to the Original MSA and defines them together as the "Agreement" (hereinafter the Original MSA, the First Amendment, the April 2011 MSA, and the Third Amendment, collectively the "Valence/OHG Contract).

15. Paragraph 2 of the Third Amendment states as follows:

> *Term Extension. Subject to the termination provisions provided for in the Agreement, the "Term" of the Agreement shall be extended*

*from the effective date of this Amendment 3 and shall continue until December 31, 2017.*

16. Exhibit A to the Third Amendment contained provisions whereby Valence's monthly fee was reduced in accordance with the agreement between the parties.

17. The Third Amendment does not fully reflect the intention of the parties as mutually expressed and reduced to writing in the term sheet aforedescribed since it does not clearly and unequivocally state that the Valence/OHG Contract between the parties could not be terminated except for cause through December 31, 2017.

18. On March 24, 2015, OHG notified Valence that it intended to terminate its agreement with Valence without cause ninety (90) days hence, actually as of June 30, 2015.

19. In response to this notice, Valence informed OHG that it does not have the right to terminate the Valence/OHG Contract except for cause until December 31, 2017, but OHG has persisted with its intention to terminate the agreement.

20. At no time during the pendency of the relationship between OHG and Valence beginning on February 10, 2010, has OHG ever notified Valence either orally or in writing that it considers Valence to have breached any applicable term of the Valence/OHG Contract or even to have performed in a materially substandard fashion.

**COUNT I – DECLARATORY JUDGMENT**
**(OHG does not have the right to terminate the Valence OHG agreement except for cause)**

21. Valence hereby incorporates and realleges the allegations in paragraphs 1-20 of this Complaint as if fully set forth herein.

22. There exists a genuine and bona fide dispute and an actual controversy and disagreement between Valence and OHG concerning whether OHG has the right to terminate the Valence/OHG Contracts without cause before December 31, 2017. That dispute centers on

whether OHG currently has that right under the Third Amendment.

23. Under the Third Amendment, the Valence/OHG Contract extended through December 31, 2017 except insofar as the Valence/OHG Contract contains other "termination provisions."

24. The Valence/OHG Contract did not, as of July 19, 2012, upon the signing of the Third Amendment contain any not-for-cause termination clause.  Section 3.6 provision in the Original MSA as modified by the First Amendment expired by its own terms since it gave OHG not-for-cause termination rights depending on how it is interpreted either (a) upon the thirty sixth (36th) month after the original Effective Date, or (b) between the thirty sixth (36th) and forty fifth (45th) month after the original Effective Date.  As well, the Second Amendment, which succeeded the First Amendment, contains no not-for-cause termination rights at all.

25. The Valence/OHG Contract therefore does not permit OHG to terminate without cause effective June 30, 2015 or at any time without cause prior to December 31, 2017.

26. OHG's action in terminating the Valence/OHG Contract is therefore wrongful and without contractual basis.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Valence Health Inc., demands judgment against Defendant, OhioHealth Group, Ltd., as follows:

(a) A declaration that OHG does not have the right under the Valence/OHG Contract to terminate without cause effective June 30, 2015.

(b) A declaration that OHG does not have the right under the Valence/OHG Contract to terminate without cause at any time before December 31, 2017.

(c) Such other and further relief as this Court deems just and proper.

## COUNT II – BREACH OF CONTRACT
### (OHG has breached the Valence/OHG Contract)

27. Valence hereby incorporates and realleges the allegations in paragraphs 1-20 of this Complaint as if fully set forth herein.

28. Under the express terms and provisions of the Valence/OHG Contract, OHG is contractually obligated to continue the agreement through December 31, 2017 except for termination for cause, which is not apparent in this case.

29. OHG's action in terminating the Valence/OHG Contract effective June 30, 2015 constitutes a breach of contract.

30. As a consequence of OHG's breach of contract, Valence will be deprived of lost profits and will incur similar losses in an amount in excess of $1,900,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Valence Health Inc., demands judgment against Defendant, OhioHealth Group, Ltd., as follows:

(a) A judgment in the amount of $1,900,000.

(b) Its costs and attorney's fees relating to the filing of this claim.

(c) Such other and further relief as this Court deems just and proper.

## COUNT III – REFORMATION
### (Reformation of the Third Amendment - pleaded in the alternative)

31. Valence hereby incorporates and realleges the allegations in paragraphs 1-20 of this Complaint as if fully set forth herein.

32. The Third Amendment, insofar as it is held to permit OHG a continued right to terminate the Valence/OHG Contract without cause on ninety (90) days notice, is inconsistent with the intention of the parties in agreeing to the terms under which the Third Amendment would be signed. Rather, it was the specific intention of the parties that no such not-for-cause

termination right would be permitted to OHG through December 31, 2017; and OHG specifically received value for that agreement in the form of reduced monthly base fees and enlarged services over a period of five and a half (5½) years.

33. To the extent that the Third Amendment continues a not-for-cause termination right from the First Amendment, it constitutes a material deviation from the intention of the parties, requiring thereby reformation.

34. Insofar as the Third Amendment continues OHG's not-for-cause termination right under section 3.6 of the Original MSA as set forth in the First Amendment thereto, this Court should reform the Third Amendment to clarify that that right was eliminated by agreement of the parties effective July 19, 2012.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Valence Health Inc., demands judgment against Defendant, OhioHealth Group, Ltd., as follows:

(a) The reformation of the Third Amendment to specify that OHG may not terminate the Valence/OHG Contract until December 31, 2017 without cause.

(b) Such other and further relief as this Court deems just and proper.

Respectfully submitted,

**/s/ Joseph F. Murray**
Joseph F. Murray, Trial Attorney (0063373)
Geoffrey J. Moul (0070663)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH  43215
(614) 488-0400
(614) 488-0401 *facsimile*
E-mail: murray@mmmb.com
             moul@mmmb.com

Norman P. Jeddeloh (*pro hac vice* to be filed)
Arnstein & Lehr LLP
120 South Riverside Plaza
Suite 1200
Chicago, IL 60606
(312) 876-7100
(312) 876-0288 *facsimile*
E-mail: npjeddeloh@arnstein.com

*Attorneys for Plaintiff*