IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VALENCE HEALTH, INC., | ) | |
| | ) | |
| Plaintiff/CounterDefendant, | ) | |
| | ) | CASE NO.: 2:15-cv-02235 |
| v. | ) | |
| | ) | JUDGE MARBLEY |
| | ) | |
| OHIOHEALTH GROUP, LTD., | ) | MAGISTRATE JUDGE KING |
| | ) | |
| Defendant/CounterPlaintiff. | ) | |

## THE ANSWER AND AFFIRMATIVE DEFENSES OF VALENCE HEALTH, INC. TO OHIOHEALTH GROUP LTD.'S COUNTER CLAIM

NOW COMES Plaintiff/CounterDefendant, VALENCE HEALTH, INC. ("Valence"), by and through its attorneys, Norman P. Jeddeloh and Arnstein & Lehr LLP, and Geoffrey J. Moul, Joseph F. Murray, and Murray Murphy Moul + Basil LLP, and for its Answer to OhioHealth Group, Ltd.'s, ("OHG") Counterclaim states as follows:

## PRELIMINARY STATEMENT

2.     OHG is a healthcare management company that provides products and services to medical providers, third-party administrators, employers and individuals. Of particular relevance to this action are the products and services that OHG offers to medical providers through OHG's clinically-integrated network of more than 2,100 physicians and the OhioHealth facilities. OHG's clinically-integrated program is referred to as Health$^4$. The purpose of Health$^4$ is to provide consistent, high-quality care to patients.

**ANSWER:**     In response to the allegations in Paragraph 2, Valence states as follows:

(i)     Valence admits that OHG is a healthcare management company as described.

(ii)     Valence lacks facts sufficient to admit or deny OHG's statement of purpose; and

(iii)     Valence denies the remaining allegations in Paragraph 2.

3.     In order to help its medical providers deliver consistent, high-quality care to patients, OHG collects and processes patient health information ("PHI") from providers, medical laboratories, and third-party payers. OHG uses the collective PHI to help the providers improve their care and treatment of patients, which results in cost-savings for patients and third-party

payers as well. Thus, the collective PHI results help OHG to negotiate favorable contracts with third-party payers that benefit the providers in Health[4], as well as their patients.

      **ANSWER:**   Valence lacks facts sufficient to admit or deny the allegations in Paragraph 3.

4.     Beginning in February 2010, OHG contracted with and relied on Valence to assist with the collection and analysis of PHI. From 2010 to 2015, Valence's performance was mixed, at best, and OHG continued to lose confidence in Valence's performance over time. Simply stated, Valence's products did not perform as promised. Valence provided software to collect and process data for use by OHG and the Health[4] providers, but Valence's results were unreliable in part because Valence's products did not have the ability to collect and process the PHI as promised. As a result, OHG has lost time and money trying to mitigate damages arising from Valence's failure to perform, and OHG's reputation has been damaged among medical providers and third-party payers.

      **ANSWER:**   In response to the allegations in Paragraph 4, Valence states as follows:

(i)     Valence admits that it contracted with OHG in a period from 2010 until OHG wrongfully terminated the agreement under an inapplicable not-for-cause  termination clause on June 30, 2015;

(ii)     Valence denies the remaining allegations in Paragraph 4;

(iii)     As an affirmative matter, OHG repeatedly materially impeded and undermined Valence's performance under the Agreement by demanding multiple custom non-standard modifications to Valence's package of services as described in the Agreement, each of which disturbed the functioning of Valence's systems and services, introducing unexpected complexities, causing thereby the need for repeated work arounds which Valence performed effectively, efficiently and without additional cost to OHG;

(iv)     As a further affirmative matter, OHG failed to properly collect and manipulate

data and PHI before providing it to Valence, directly resulting in multiple processing and system errors.

(v)     As a further affirmative matter, data which OHG required Valence to collect directly from third parties was itself flawed and fundamentally unusable resulting thereby in output which was not reliable or useable; and

(vi)    As a further affirmative matter, at all times during performance under the Agreement, Valence performed Services in a workmanlike and professionally diligent manner.

5.      Valence's products did not perform as promised. OHG terminated its agreement with Valence effective June 30, 2015. This lawsuit involves Valence's far-fetched interpretation of the agreement under which Valence claims OHG could not invoke its termination rights. OHG terminated the agreement and seeks damages in this action as a result of Valence's poor products and performance.

**ANSWER:**     In response to the allegations in Paragraph 5, Valence admits that OHG wrongfully terminated the Agreement effective June 30, 2015 under an inapplicable not-for-cause termination clause.  Valence denies the remaining allegations in Paragraph 5.

<u>**PARTIES**</u>

6.      OHG is an Ohio limited liability company, and its members are citizens of Ohio for purposes of jurisdiction. For purposes of diversity, OHG is a citizen of Ohio.

**ANSWER:**     Valence admits the allegations in Paragraph 6.

7.      Valence is a Delaware Corporation with its principal place of business in Illinois. For purposes of diversity, Valence is a citizen of both Delaware and Illinois.

**ANSWER:**     Valence admits the allegations in Paragraph 7.

**JURISDICTION AND VENUE**

8.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties have diverse citizenship and the amount in controversy exceeds $75,000.00.

      **ANSWER:**    Valence admits the allegations in Paragraph 8.

9.      This Court has personal jurisdiction over Valence because it conducts business in Ohio.

      **ANSWER:**    Valence admits that this Court has personal jurisdiction over Valence.

10.      Venue is proper in this Court because the activities giving rise to the counterclaims occurred in Columbus, Ohio and have caused damage to OHG in Columbus, Ohio.

      **ANSWER:**    In response to the allegations in Paragraph 10, Valence admits only that

venue is proper in Columbus, Ohio.

**FACTS**

11.      On February 15, 2010, OHG entered into the Master Services Agreement with Valence ("Original MSA"). A true and accurate copy of the Original MSA was filed under seal as Exhibit A to Complaint for Declaratory Judgment and Other Claims on July 1, 2015.

      **ANSWER:**    Valence admits the allegations in Paragraph 11.

12.      Under the Original MSA, Valence was required to provide data collection and management services, as well as the software associated with those services, as set forth in Exhibit A to the Original MSA in exchange for payment by OHG as set forth in Exhibit B to the Original MSA.

      **ANSWER:**    Valence makes no response to the allegations in Paragraph 12 since they

describe the terms of the Agreement which may speak for themselves.

13.      On January 6, 2011, OHG entered into the First Amendment to Management Services Agreement with Valence ("First Amendment"). A true and accurate copy of the First Amendment was filed under seal as Exhibit B to Complaint for Declaratory Judgment and Other Claims on July 1, 2015. The First Amendment did not change the scope of services to be provided by Valence under the Original MSA.

**ANSWER:**  In response to the allegations in Paragraph 13, Valence admits that it entered into the First Amendment on January 6, 2011 but makes no response to the remaining allegations in Paragraph 13 since they describe the terms of the Agreement which may speak for themselves.

14.     On April 11, 2011, OHG entered into a supplemental Management Services Agreement with Valence ("Second Amendment"). A true and accurate copy of the Second Amendment was filed under seal as Exhibit C to Complaint for Declaratory Judgment and Other Claims on July 1, 2015. The Second Amendment incorporated the Original MSA, and in general, Valence remained responsible for the collection and management of data in exchange for payment by OHG.

**ANSWER:**  In response to the allegations in Paragraph 14, Valence admits that it entered into the Second Amendment on April 11, 2011 but makes no response to the remaining allegations in Paragraph 14 since they describe the terms of the Agreement which may speak for themselves

15.     OHG entered into the Third Amendment to the Original MSA, effective August 1, 2012 ("Third Amendment"). A true and accurate copy of the Third Amendment was filed under seal as Exhibit D to Complaint for Declaratory Judgment and Other Claims on July 1, 2015.

**ANSWER:**  Valence admits the allegations in Paragraph 15.

16.     Under the Third Amendment, Valence warranted that it would perform the Services called for under the Agreement in a "workmanlike and professionally diligent manner . . . ."

**ANSWER:**  Valence makes no response to the allegations in Paragraph 16, since they describe the terms of the Agreement which may speak for themselves.

17.     On July 26, 2013, OHG entered into a fourth amendment to the Original MSA for normalization services ("Fourth Amendment"). The purpose of the Fourth Amendment was to clarify Valence's process of transferring PHI to OHG and to account for additional aggregation and normalization services that Valence would provide to OHG at no additional charge. The Fourth Amendment, Third Amendment, Second Amendment, First Amendment, and Original MSA are collectively referred to as the "Agreement."

**ANSWER:**  In response to the allegations in Paragraph 17, Valence admits that it

entered into the Fourth Amendment on July 26, 2013 but makes no response to the remaining allegations in Paragraph 17 since they describe the terms of the Agreement which may speak for themselves.

18.     In order to fulfill its obligations under the Agreement, Valence provided OHG with three software tools for collecting and analyzing data: (1) vMine, which collected data from the medical providers in Health[4]; (2) Vision, which provided a platform for the medical providers to review the collective PHI; and (3) vQuest, which was supposed to provide a cost-model that could be applied to the PHI and would assist OHG to negotiate with third-party payers.

        **ANSWER:**   In response to the allegations in Paragraph 18, Valence admits that, in performing under the Agreement, it gave OHG access to its Vision, vMine, and vQuest software products, which were to be used incident to and as a constituent part of Valence providing Services under the Agreement and not as standalone products,  Valence denies the remaining allegations in paragraph 18.

19.     Valence failed to fulfill its obligations under the Agreement and to perform in a workmanlike and professionally diligent manner as warranted under the Agreement for at least the following reasons:

            a.      Based on the PHI collected, Valence provided monthly reports to OHG that showed the level of compliance of patients of the medical providers in the Health[4] system. Those monthly compliance reports were consistently inaccurate and unreliable because Vision presented numerous errors when processing PHI from third-party payers.

        **ANSWER:**   In response to the allegations in Paragraph 19(a), Valence states as follows:

        (i)      Valence admits that, under the Agreement, Valence was to provide certain monthly reports;

        (ii)     Valence denies the remaining allegations in Paragraph 19(a); and

        (iii)    Valence reasserts the affirmative matters set forth in Paragraph 4 above.

      b.       Valence's Vision software also failed to process Supplemental Data Updates ("SDU") collected from medical providers concerning their patients in an accurate and timely manner. As a result of Valence's failure to process the SDUs, OHG's final compliance numbers concerning patients of medical providers in the Health[4] network were not accurate.

**ANSWER:**   In response to the allegations in Paragraph 19(b), Valence states as follows:

(i)      Valence admits that at a point during the term of the Agreement Valence learned of an error in the way its systems processed supplemental data updates, and that it acted expeditiously to prepare a workaround to resolve the error, which it did in a timely and efficient fashion after investing considerable resources to do so;

(ii)     Valence denies that it breached any term, specific or implied, of the Agreement in identifying and fixing the one time error described above or that in any way it failed to perform in a workmanlike and professionally diligent manner under the terms of the Agreement;

(iii)    As an affirmative matter, it is a known complication of software systems to occasionally develop errors in the way data is processed and that such errors occur without fault, negligence, or breach on the part of the developer of the software, which was the case with the error aforedesribed; and

(iv)    Valence reasserts the affirmative matters set forth in Paragraph 4 above.

      c.      vQuest was unusable and failed to provide a reliable cost model for third-party payer negotiations and performance tracking. Specifically, vQuest was unable to de-duplicate claims found in the collective PHI, so the utilization statistics were over-stated and made the cost model unusable.

**ANSWER:**   In response to the allegations in Paragraph 19(c), Valence denies that

vQuest as provided to OHG was unusable or failed to provide a reliable cost model for purposes as described above.  Valence reasserts the affirmative matters set forth in Paragraph 4 above.

      d.    Based on the errors OHG found in the monthly compliance reports prepared by Valence, Valence revised its process to include a staging phase for OHG to review the data on Vision before it became available to the Health[4] medical providers using Vision. During that staging phase, however, medical providers were unable to obtain accurate PHI from Vision and lost confidence in OHG's ability to manage Health[4]. OHG had to respond to numerous questions and concerns from Health[4] medical providers during the monthly staging phase.

**ANSWER:**  In response to the allegations in Paragraph 19(d), Valence states as follows:

(i)    Valence admits that it revised its procedures at OHG's request to implement a staging phase for the monthly compliance reports which included a review of data by OHG before it became available to medical providers.  Valence further admits that during the staging phase, for a limited period of time, medical providers were unable to log into the system and access any data, accurate or inaccurate, and that such was an expected and necessary consequence of the implementation of the staging phase.

(ii)    Valence lacks facts sufficient to admit or to deny whether providers may have lost confidence in OHG's ability to manage Health[4] or the basis upon which those providers lost such confidence, including whether said diminishment of confidence was caused by OHG's own failures.

(iii)    Valence lacks facts sufficient to admit or to deny whether OHG responded to numerous questions and concerns from such medical providers or whether those questions and concerns were related in any way to the staging phase aforedescribed or

whether they related to more general questions and concerns from these providers about

OHG's ability to manage the Health[4] system in general; and

(iv)     As an affirmative matter, OHG specifically understood and agreed that the

purpose for the staging phase was to permit an OHG pre-review before data was supplied

to providers.

> e.     In 2014, while Valence was updating the Vision software, PHI appeared to
> be compromised. For example, medical provider A was able to view
> confidential PHI from medical provider B on Vision. Once again, OHG's
> reputation was damaged, and OHG had to respond to numerous questions
> and concerns from medical providers concerning whether their PHI had
> been compromised.

**ANSWER:**     In response to the allegations in Paragraph 19(e), Valence states as

follows:

(i)     Valence makes no response to the allegation contained in Paragraph 19(e) that

"PHI appeared to be compromised" since, as framed, this allegation is speculative and

conclusory, not allowing for an answer;

(ii)     Valence denies that through any fault or action on its part, any physician or

provider was afforded access to any PHI which the physician or provider was not

authorized to see;

(iii)     Valence denies that OHG's reputation was damaged as a result of any conduct

engaged in by Valence under the Agreement but lacks facts sufficient to admit or to deny

whether OHG's reputation was damaged due to other causes including its own

shortcomings;

(iv)    Valence denies that the facts alleged in Paragraph 19(e) constitute a failure of performance under the agreement or demonstrates that it did not perform in a workmanlike and professionally diligent manner;

(v)    Valence lacks facts sufficient to admit or to deny whether OHG responded to "numerous questions and concerns from medical providers" or whether those questions and concerns related to some aspect of Valence performance under the contract or other deficiencies and short comings of OHG in administering its Health[4] network; and

(vi)    As an affirmative matter, OHG was warned by Valence of the possibility that providers may be able to access PHI through an information portal provided by Valence but was informed by OHG that such access did not violate HIPAA since all providers in the Network had signed Business Associates Agreements allowing for the free interchange of PHI within the network.

20.    As a result of Valence's breach of the Agreement and failure to perform in a workmanlike and professionally diligent manner, OHG has been unable to provide a reliable analysis of the collective PHI and cost-savings to the providers in Health[4]. OHG's reputation in the healthcare community, among medical providers and third-party payers has been irreparably damaged, and OHG has incurred damages in an amount in excess of $75,000.00.

    **ANSWER:**    Valence denies the allegations in Paragraph 20.

<u>**COUNT I: BREACH OF CONTRACT**</u>
**(Inaccurate Monthly Compliance Reports)**

21.    OHG incorporates Paragraphs 1 – 20 of this Counterclaim into this Paragraph.

    **ANSWER:**    Valence incorporates by reference its responses to Paragraphs 2-20 of the Counterclaim.

22.    Valence promised to provide reliable software and data collection services, among other

things, under the Agreement.

> **ANSWER:**    In response to the allegations in Paragraph 22, Valence admits only that it promised to provide Valence Services as described in the Agreement and under its terms and limitations.  Valence denies the remaining allegations in Paragraph 22.

23.    Valence breached the Agreement by failing to provide complete and accurate monthly compliance reports.

> **ANSWER:**    Valence denies the allegations in Paragraph 23. In further response to the allegations in Paragraph 23, Valence reasserts the affirmative matters set forth in Paragraph 4 and 19(a) above.

24.    As a result of Valence's breach of the Agreement, OHG has spent time and effort to discover and correct inaccuracies in the monthly compliance reports in order to be able to use the monthly compliance reports for the benefit of the providers and their patients. As a further result of Valence's breach, OHG has been damaged in an amount exceeding $75,000.00.

> **ANSWER:**    Valence denies the allegations in Paragraph 24.

## COUNT II:  BREACH OF CONTRACT
### (Inability to Process SDUs)

25.    OHG incorporates Paragraphs 1 – 24 of this Counterclaim into this Paragraph.

> **ANSWER:**    Valence incorporates by reference its responses to Paragraphs 2-24 of the Counterclaim.

26.    Valence promised to provide reliable software and data collection services, among other things, under the Agreement.

> **ANSWER:**    In response to the allegations in Paragraph 26, Valence admits only that it promised to provide Valence Services as described in the Agreement and under its terms and limitations.  Valence denies the remaining allegations in Paragraph 26.

27.    Valence breached the Agreement by failing to process SDUs in an accurate and timely

manner. Because Valence failed to timely and accurately account for all SDUs, the final compliance numbers were inaccurate and unreliable.

**ANSWER:**    Valence denies the allegations in Paragraph 27. In further response to the

allegations in Paragraph 27, Valence reasserts the affirmative matters set forth in Paragraphs 4

and 19(b) above.

28.    As a result of Valence's breach of the Agreement, OHG has spent time and effort to discover and correct inaccuracies based on unaccounted for SDUs and in order to be able to correct the compliance data for the benefit of the providers and their patients. As a further result of Valence's breach, OHG has been damaged in an amount exceeding $75,000.00.

**ANSWER:**    Valence denies the allegations in Paragraph 28.

## COUNT III: BREACH OF CONTRACT
### (Unusable vQuest Software)

29.    OHG incorporates Paragraphs 1 – 28 of this Counterclaim into this Paragraph.

**ANSWER:**    Valence incorporates by reference its responses to Paragraphs 2-28 of the

Counterclaim.

30.    Valence promised to provide reliable software and data collection services, among other things, under the Agreement.

**ANSWER:**    In response to the allegations in Paragraph 30, Valence admits only that it

promised to provide Valence Services as described in the Agreement and under its terms and

limitations.  Valence denies the remaining allegations in Paragraph 30.

31.    Valence breached the Agreement by failing to provide software that would produce reliable data. Specifically, OHG has received no benefit from the vQuest software Valence provided because vQuest does not de-duplicate claims such that the data OHG obtains from vQuest is overstated and unusable.

**ANSWER:**    Valence denies the allegations in Paragraph 31.  In further response to the

allegations in Paragraph 31, Valence reasserts the affirmative matters set forth in Paragraph 4 and

19(c) above.

32.     As a result of Valence's breach of the Agreement, OHG has been damaged in an amount exceeding $75,000.00.

      **ANSWER:**     Valence denies the allegations in Paragraph 32.


## COUNT IV:  BREACH OF CONTRACT
### (Inaccurate Patient Data from Vision Software)

33.     OHG incorporates Paragraphs 1 – 32 of this Counterclaim into this Paragraph.

      **ANSWER:**     Valence incorporates by reference its responses to Paragraphs 2-32 of the Counterclaim.

34.     Valence promised to provide reliable software and data collection services, among other things, under the Agreement.

      **ANSWER:**     In response to the allegations in Paragraph 34, Valence admits only that it promised to provide Valence Services as described in the Agreement and under its terms and limitations.  Valence denies the remaining allegations in Paragraph 34.

35.     Valence breached the Agreement by failing to provide consistently reliable data from the Vision software. Specifically, Health[4] medical providers were unable to access accurate patient data from Vision during Valence's monthly staging phase of PHI for OHG's review in Vision.

      **ANSWER:**     Valence denies the allegations in Paragraph 35. In further response to the allegations in Paragraph 35, Valence reasserts the affirmative matters set forth in Paragraph 4 and 19(d) above.

36.     As a result of Valence's breach of the Agreement, OHG has been damaged in an amount exceeding $75,000.00.

      **ANSWER:**     Valence denies the allegations in Paragraph 36.

## COUNT V: BREACH OF CONTRACT
### (Accessibility of PHI From Updated Vision Software)

37.     OHG incorporates Paragraphs 1 – 36 of this Counterclaim into this Paragraph.

**ANSWER:**     Valence incorporates by reference its responses to Paragraphs 2-36 of the

Counterclaim.


38.     Valence promised to provide reliable software and data collection services, among other things, under the Agreement.

**ANSWER:**     In response to the allegations in Paragraph 38, Valence admits only that it

promised to provide Valence Services as described in the Agreement and under its terms and

limitations.  Valence denies the remaining allegations in Paragraph 38.


39.     Valence breached the Agreement by failing to update the Vision software in a manner that would cause minimal interruption to the Health[4] medical providers and that would ensure the integrity of the PHI.

**ANSWER:**     Valence denies the allegations in Paragraph 39. In further response to the

allegations in Paragraph 39, Valence reasserts the affirmative matters set forth in Paragraph 4 and

19(e) above.


40.     Because Valence did not take adequate steps to protect the PHI while updating Vision, Health[4] medical providers became concerned that their PHI had been compromised. OHG had to respond to numerous inquiries from the Health[4] providers.

**ANSWER:**     In response to the allegations in Paragraph 40, Valence states as follows:


(i)     Valence lacks facts sufficient to admit or deny what may have been the concerns

of unidentified third parties or what circumstances or occurrences may have led to those

concerns.

(ii)     Valence lacks facts sufficient to admit or deny whether unidentified third parties may have made inquiry of OHG, what inquiries they may have made or what may have precipitated those inquiries.

(iii)    Valence denies the remaining allegations in Paragraph 40.

(iv)     In further response to the allegations in Paragraph 40, Valence reasserts the affirmative matters set forth in Paragraph 4 and 19(e) above.

41.     As a result of Valence's breach of the Agreement, OHG's reputation among Health[4] medical providers was damaged, and OHG suffered damages in excess of $75,000.00.

**ANSWER:**     Valence denies the allegations in Paragraph 41.

## <u>COUNT VI:  BREACH OF EXPRESS WARRANTY</u>

42.     OHG incorporates Paragraphs 1 – 41 of this Counterclaim into this Paragraph.

**ANSWER:**     Valence incorporates by reference its responses to Paragraphs 2-41 of the Counterclaim.

43.     Valence warranted that it would perform the services it was obligated to provide to OHG under the Agreement in a workmanlike and professionally diligent manner.

**ANSWER:**     Valence makes no response to the allegations in Paragraph 43, since they describe the terms of the Agreement which may speak for itself.

44.     Valence breached its express warranty by failing to perform in a workmanlike and professionally diligent manner.

**ANSWER:**     Valence denies the allegations in Paragraph 44. In further response to the allegations in Paragraph 44, Valence reasserts the affirmative matter set forth in paragraph 4 and 19 above.

45.     As a result of Valence's breach of warranty, OHG has been damaged in an amount exceeding $75,000.00.

     **ANSWER:**     Valence denies the allegations in Paragraph 45.

     WHEREFORE, Plaintiff/CounterDefendant prays for judgment in its behalf and against Defendant/Counter/Plaintiff OHG.

## VALENCE FIRST AFFIRMATIVE DEFENSE
## WAIVER

46.     OHG has waived any claims for breach of contract for the reasons set forth in the following paragraphs:

47.     At all times while the Agreement was in effect, Valence informed OHG of defects, faults, or duplication in data submitted by it or third parties, the need for software modifications to work around the defects, faults and duplications, the consequence of such efforts and that such efforts may require several phases to fully rectify, if these data problems could ever be fully rectified through work arounds.

48.     At all times hereunder, OHG informed Valence that it understood the problems associated with the data and the process of providing work arounds and the limitations of work arounds to resolve these problems.

49.     At all times hereunder, OHG directed Valence to proceed with efforts to resolve these defects and limitations fully aware of the limitations aforedescribed.

50.     Specifically Valence did so in connection with the circumstances described in the OHG Counterclaim in Paragraphs 19(a), (b) and (c) above.

51.     OHG requested many custom configurations of the fashion in which Valence provided Valence Services and, in each instance, Valence informed OHG that providing such custom configurations may entail a several step process of refinement but that in each instance OHG directed Valence to proceed nonetheless.

52.     As a result, OHG has waived any claim that Valence has failed to perform in a professional and workman like manner in attempting to resolve problems associated with poor quality data and in customizing its processes to meet to OHG's unique requirements.

WHEREFORE, Valence Health, Inc. prays for judgment in its behalf and against OHG.

Respectfully Submitted,

VALENCE HEALTH, INC.

By: /s/ Norman P. Jeddeloh
        One of its Attorneys

Norman P. Jeddeloh (admitted *pro hac vice*)
Arnstein & Lehr LLP
120 South Riverside Plaza
Suite 1200
Chicago, IL 60606
(312) 876-7100
(312) 876-0288 facsimile
E-mail: npjeddeloh@arnstein.com

Joseph F. Murray, Trial Attorney (0063373)
Geoffrey J. Moul (0070663)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
(614) 488-0400
(614) 488-0401 facsimile
E-mail: murray@mmmb.com
            moul@mmmb.com

**Certificate of Service**

Norman P. Jeddeloh, an attorney, certifies that on August 3, 2015 he filed THE ANSWER AND AFFIRMATIVE DEFENSES OF VALENCE HEALTH, INC. TO OHIOHEALTH GROUP LTD.'S COUNTER CLAIM with the Clerk of the Court by the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Norman P. Jeddeloh